IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                                      :  Chapter 11
In re                                                 :
                                                      :  Case No. 13-10741 (PJW)
ROTECH HEALTHCARE INC., et al.,                       :
                                                      :  Jointly Administered
              Debtors.¹                               :
                                                      :  Related to Docket No. 159, 310
                                                      :
                                                      :  Objection Deadline: June 4, 2013 at 4:00 p.m. (ET)
                                                      :  Hearing Date: June 13, 2013 at 11:00 a.m. (ET)
                                                      :
------------------------------------------------------x
```

**DEBTORS' OBJECTION TO APPLICATION FOR ORDER,
PURSUANT TO 11 U.S.C. §§ 328, 330 AND 1103, AUTHORIZING
EMPLOYMENT AND RETENTION OF BIFFERATO LLC AS
DELAWARE COUNSEL TO THE STATUTORY COMMITTEE OF
EQUITY SECURITY HOLDERS, *NUNC PRO TUNC*, TO APRIL 25, 2013**

Rotech Healthcare Inc. ("Rotech" or the "Company") and its title 11 subsidiaries, as chapter 11 debtors and debtors in possession (collectively with Rotech, the "Debtors"), submit this objection (the "Objection") to the *Application for Order, Pursuant to 11 U.S.C. §§ 328, 330 and 1103, Authorizing Employment and Retention of Bifferato LLC* ("Bifferato") *as Delaware Counsel to the Statutory Committee of Equity Security Holders* (the "Equity Committee")*, Nunc Pro Tunc, to April 25, 2013*, filed on May 21, 2013 [Docket No. 310] (the "Application").  In support of this Objection, the Debtors respectfully represent:

**Background**

1. On April 8, 2013, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors

---

[1] The Debtors in these chapter 11 cases are listed in Schedule 1 to the Motion to Disband (as defined below) and at http://dm.epiq11.com/rotech.  The address of the corporate headquarters of the Debtors and the mailing address of each of the Debtors is 2600 Technology Drive, Suite 300, Orlando, FL 32804.

01:13673647.2

continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only.  Additional information regarding the Debtors' businesses and the events that led to the filing of these chapter 11 cases is set forth in the *Declaration of Steven P. Alsene in Support of Debtors' First Day Motions and Applications*, dated April 8, 2013 [Docket No. 4].

2. Creditors' Committee Appointment.  On April 18, 2013, the United States Trustee (the "UST") appointed a statutory creditors' committee pursuant to section 1102 of the Bankruptcy Code.

3. Equity Committee Appointment.  On April 24, 2013, the UST appointed the Equity Committee.

4. Shareholders' Professionals' Representation to Procure Appointment of Equity Committee.  As the Court knows from having reviewed the materials given to the UST in support of the request to appoint the Equity Committee, the Equity Committee proponents insisted the Debtors were worth at least $143 million and possibly $273 million in excess of all their liabilities.  The proponents unqualifiedly represented:

> "[F]inancial data [ ] *unequivocally supports* an implied enterprise value of $740 million to $867 million . . ." *** "Here, management's surrender of *$146 million to $273 million* in equity value . . . leaves no doubt that its representation of the interests of equity holders is less than zealous . . ."

April 10th Baker & McKenzie Letter to UST at 6, 7 (emphasis supplied).

5. On May 14, 2013, the Debtors filed the *Debtors' Objection to Application for Order, Pursuant to 11 U.S.C. §§ 328, 330 and 1103, Authorizing Employment and Retention of Baker & McKenzie LLP as Counsel to the Statutory Committee*

01:13673647.2

2

*of Equity Security Holders, Nunc Pro Tunc, to April 25, 2013* [Docket No. 271] (the "Objection to the Baker & McKenzie Retention").[2]

6. The Issue. The Debtors are raising only one issue in respect of the retention of professionals for the Equity Committee. Namely, what happens if the estates are not solvent as the equity holders represented? Should the Equity Committee professionals who made the misstatement or the secured lenders bear the loss attributable to the equity holders' misstatement? We submit, the Equity Committee professionals should be responsible for the basis on which they procured the creation of the Equity Committee.

7. In short, Bankruptcy Code section 328(a) only allows professionals to be retained "on any reasonable terms and conditions." It is not reasonable for the Equity Committee to retain professionals to be paid if the estate cannot pay in full all claims, including secured claims, because (a) cash collateral will have to be used to pay the professionals, which enlarges the secured claimholders' losses, and (b) the shareholders represented the estates were solvent to procure the Equity Committee's appointment in the first place.

8. Therefore, the Debtors requested the Court condition any fees and expenses awarded to Baker & McKenzie LLP on the Debtors' estates being solvent or the Equity Committee directly benefitting the secured lenders' collateral. The Objection to the Baker & McKenzie Retention was joined by the Consenting Second Lien Noteholders[3] [Docket No. 281], who also argued that unless creditors are paid in full, counsel for the Equity Committee should be paid on a contingency fee basis, or at least be subject to a strict

---

[2] The arguments set forth in the Objection to the Baker & McKenzie Retention are incorporated herein in their entirety and are asserted against the employment and retention of Bifferato on the terms requested by the Equity Committee.

[3] Capital Research and Management Company, Fidelity Investments, Silver Point Capital, LP and Venor Capital Management LP.

01:13673647.2

3

cap on fees and expenses. The hearing on the retention of Baker & McKenzie LLP is scheduled on June 13, 2013. The Debtors now propound the same objection to the retention of Bifferato.

## Objection

### A. The Court Can only Approve a Retention Application on Reasonable Terms

9. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a statutory committee, "with the court's approval," may employ a professional "on any reasonable terms and conditions of employment." *See* 11 U.S.C. § 328(a). Here, the proposed terms are not reasonable because they saddle the Debtors' estates with unlimited administrative expenses payable from cash collateral, notwithstanding that the estates are hopelessly insolvent and the services of the Equity Committee's attorneys are not even aimed at directly improving the value of the secured lenders' collateral within the meaning of *In re Visual Industries, Inc.*, 57 F.3d 321 (3d Cir. 1995).

10. A corollary to the requirement that bankruptcy courts only approve reasonable terms and conditions is that the Court can deny approval unless and until reasonable conditions are imposed. In that way, bankruptcy courts have the authority to place conditions on a committee's retention of professionals, including by limiting professionals' fees. In *In re Fed. Mogul-Global, Inc.*, 348 F.3d 390, 398 (3d Cir. 2003) (Alito, J.), the U.S. Court of Appeals for the Third Circuit (the "Third Circuit") held that "a Bankruptcy Court need not approve or reject an application as presented but may approve an application with modified terms that the Court finds necessary to render the proposed employment reasonable." *See also Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1997). Bankruptcy courts have limited reimbursement of professionals

representing equity committees solely to the extent their constituents achieve recovery. *See In re ATP Oil & Gas Corp.*, No. 12-36187 (Bankr. S.D. Tex. Dec. 20, 2012) [Docket No. 1098] (providing that fees of equity committee counsel "shall be deducted and payable only from the gross recovery, if any, made available for distribution to the Debtor's equity security holders in the Chapter 11 case"). Compensation for Equity Committee professionals here only satisfies the Bankruptcy Code section 328 standard of reasonableness if the estates prove solvent or the Equity Committee directly benefits the secured lenders' collateral, in each instance by no less than the amount of fees to be awarded.

**B.    When All Cash is Cash Collateral, an Equity Committee Cannot Be Paid Absent Actual Solvency or Secured Lender Consent**

11.    In this case, all cash is cash collateral of the secured lenders. Absent a clear showing of solvency, professionals representing an out-of-the-money equity committee should not be given *carte blanche* to drain estate resources, which are also collateral.

12.    The Third Circuit has made clear that collateral must be directly benefited before it can be taxed with the estate's expenses and even the supply of raw material to the debtor does not qualify for payment from collateral if it does not directly benefit the collateral. *See In re Visual Industries, Inc.*, 57 F.3d 321 (3d Cir. 1995) (trade creditor not allowed to surcharge collateral under section 506(c) because the raw materials furnished to the debtor did not directly benefit the secured creditors' property*)*; *In re Towne, Inc.*, Civ. No. 11-5435, 2012 U.S. Dist. LEXIS 87871 *16-17 (D.N.J. June 25, 2012) (The Third Circuit has held that "to recover expenses under § 506(c), a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the secured creditors."); *Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings, Co.)*, 799 F.2d 91, 94

01:13673647.2

(3d Cir. 1986), *quoting In re Afco Enters., Inc.*, 35 B.R. 512 (Bankr. D. Utah 1983) (collateral cannot be surcharged for expense that does not sustain going concern value). Accordingly, the Equity Committee's professionals should not receive the secured lenders' cash collateral for its own administrative fees and expenses until it has proven solvency or that the Equity Committee benefited, not harmed, the collateral by no less than the amount of fees awarded.

C. **The Equity Committee Must Add (Rather Than Destroy) Value to the Debtors' Estates Before its Professionals May Seek Reimbursement of Fees and Expenses**

13. Among other negative consequences, the existence of the Equity Committee continues to create, as it already has, waste of many parties' time and expense. For example, the Equity Committee objected to the Debtor's critical funding needs, sought and obtained costly and distracting discovery and created delay and uncertainly in the consummation of the Debtor's financing, only to have its objections overruled virtually in their entirety resulting in no benefit to the Equity Committee's constituents. Regardless, the Equity Committee filed a notice of appeal to the Court's decision [Docket No. 324]. As this Court noted, if successful, the Equity Committee's actions would have "killed" this chapter 11 case and, if left unchecked by contingency-based fees, will continue to pursue aggressive and unreasoned positions with no upside for its constituents or these estates. *In re Rotech Healthcare Inc.*, Ch. 11 Case No. 13-10747 (PJW), transcript of hearing, at p. 121, ln. 14 (Bankr. D. Del. May 14, 2013).

14. In sum, the Debtors' estates should not be made to pay for the fees and expenses of the Equity Committee's professionals in the absence of a demonstration of solvency. *In re Pilgrim's Pride Corp.*, 407 B.R. 211, 217 (Bankr. N.D. Tex. 2009) (emphasizing professionals representing an equity committee may not be entitled to

01:13673647.2

compensation if there was ultimately no return for equity); *see also Kaye v. Hughes & Luce, LLP (In re Gadzooks, Inc.)*, 2007 WL 2059724, 2007 U.S. Dist. LEXIS 50929 (N.D. Tex. July 13, 2007) *appeal dismissed Kaye v. Hughes & Luce, LLP (In re Gadzooks, Inc.)*, 291 Fed. Appx. 652 (5th Cir. 2008) (ruling the Fifth Circuit's decision in *Andrews & Kurth, L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414, 426 (5th Cir. 1998) required that professionals representing equity show a contribution in a chapter 11 case to be compensated by the estate); *In re Emons Indus.*, 50 B.R. 692, 693 (Bankr. S.D.N.Y. 1985); *see also* 11 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

[*Remainder of Page Left Intentionally Blank*]

## **Conclusion**

WHEREFORE the Debtors request an order (i) denying the Application, or (ii) rendering the terms of retention reasonable by conditioning fee awards to Bifferato on the Debtors' estates being solvent or the Equity Committee directly benefitting the secured lenders' collateral, in each instance by no less than the amount of fees and reimbursement to be awarded, and (iii) granting the Debtors such other and further relief as is just.

| | |
|---|---|
| Dated: June 4, 2013<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>/s/ Joseph M. Barry<br>James L. Patton, Jr. (No. 2202)<br>Robert S. Brady (No. 2847)<br>Joseph M. Barry (No. 4221)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  302.571.6600<br>Facsimile:  302.571.1253<br><br>-and-<br><br>Martin J. Bienenstock<br>Geoffrey T. Raicht<br>Vincent Indelicato<br>PROSKAUER ROSE LLP<br>Eleven Times Square<br>New York, New York 10036<br>Telephone:  212.969.3000<br>Facsimile:  212.969.2900<br><br>*Co-Attorneys for the Debtors and Debtors in Possession* |

01:13673647.2